UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONY DEROSA-GRUND, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:15-cv-02763 |
| | § § | |
| TIME WARNER INC., WARNER BROS. ENTERTAINMENT INC., NEW LINE PRODUCTIONS, INC., CHAD HAYES, and CAREY HAYES, | § § § § § § § | |
| Defendants. | § § | |

**TIME WARNER INC.'S WARNER BROS. ENTERTAINMENT INC.'S, AND NEW LINE PRODUCTIONS, INC.'S MOTION TO DISMISS ON THE BASIS OF COLLATERAL ESTOPPEL OR, IN THE ALTERNATIVE, <u>MOTION TO DISMISS OR STAY IN FAVOR OF ARBITRATION</u>**

Subject to their pending Motion for Sanctions (Doc. No. 4), Defendants Warner Bros. Entertainment Inc., New Line Productions, Inc. ("New Line"), and Time Warner Inc. (collectively "Defendants") file this Motion to Dismiss on the Basis of Collateral Estoppel, or in the Alternative, Motion to Dismiss or Stay in Favor of Arbitration as follows:

**SUMMARY**

The Court should dismiss this case on the basis that Plaintiff is collaterally estopped from litigating the issue of Defendants' use of "The Conjuring Treatment." Plaintiff's claims are all based on his allegation that he wrote a story called "The Conjuring Treatment," which he claims was used without authorization by Defendants as the foundation for the motion picture "*The Conjuring*," as well as the subsequent motion pictures "*Annabelle*" and "*The Conjuring 2*." Plaintiff previously alleged that he wrote the same story in prior litigation and in an arbitration

1

involving the same facts and issues. Since Judge Rosenthal previously ruled that these issues were subject to arbitration, and since the arbitration resulted in a ruling in favor of Defendants, Plaintiff is collaterally estopped from litigating the issue of Defendants' use of "The Conjuring Treatment" both by Judge Rosenthal's prior ruling and by the arbitrator's award. Plaintiff's suit is simply a transparent attempt to avoid the arbitrator's ruling and relitigate already-decided issues.

Alternatively, all of Plaintiff's claims should be dismissed or stayed in favor of arbitration based on broad arbitration agreements between Plaintiff and New Line. Plaintiff and New Line entered into two pertinent agreements containing broad arbitration provisions: (1) a Quitclaim Agreement, under which Plaintiff sold all of his rights to "The Conjuring" project, including the treatment and a screenplay, both entitled "The Conjuring," the rights he purportedly obtained from real-life paranormal investigators Ed and Lorraine Warren, and the Warrens' entire case file library, among other things; and (2) a Producer Loanout Agreement, under which Plaintiff agreed to serve as a producer in connection with "The Conjuring" motion picture in exchange for compensation. The first amendment to the Quitclaim Agreement expressly covers the very "treatment" over which Plaintiff now sues. Because Plaintiff's claims all arise out of and relate to agreements containing broad arbitration provisions, the Court should dismiss or stay this case in favor of arbitration.

In the alternative, and to the extent the Court determines that any of Plaintiff's claims are non-arbitrable (all of his claims *are* clearly arbitrable), the parties' agreements contain a forum-selection clause mandating that any claim "that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction in Los Angeles County."

As such, any remaining claims must be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

**A.     The Parties' Agreements.**

In November 2009, pursuant to a written Quitclaim Agreement, and a later amendment thereto (the "Quitclaim Agreement"), New Line purchased all of Plaintiff's rights, title, and interest in multiple literary properties, including but not limited to a treatment and screenplay for a motion picture project entitled "The Conjuring," the life rights of real-life paranormal investigators Ed and Lorraine Warren, and the Warrens' entire case file library.  *See* Ex. 1, *Evergreen Media Holdings v. Warner Bros. Entm't*, No. H-14-0793, 2014 WL 5681852, at *2-4 (S.D. Tex. Nov. 4, 2014); Ex. 2, Quitclaim Agreement; Ex. 2A, Amendment No. 1 to Option Quitclaim Agreement.  As discussed below, the Quitclaim Agreement expressly governed "The Conjuring Treatment" over which Plaintiff now sues.  *See* Ex. 2A, Amendment No. 1 to Option Quitclaim Agreement at ¶ 24 [NEWLINE001282].  As noted, Plaintiff also entered into a Producer Loanout Agreement ("Producer Agreement") under which Plaintiff provided and was paid for producer services on "The Conjuring" movie.  *See* Ex. 3, Producer Agreement.  Both the Quitclaim Agreement and Producer Agreement contained broad arbitration clauses requiring the parties to arbitrate any disputes "arising out of or related to" them under the JAMS Arbitration Rules and Procedures.  Ex. 1, *Evergreen Media Holdings*, 2014 WL 5681852, at *1; Ex. 2, Quitclaim Agreement at ¶ 21(a); Ex. 3, Producer Agreement at ¶ 25.

**B.     The Arbitration and Litigation.**

Beginning in June of 2013, Plaintiff, along with Evergreen Media Holdings, LLC ("Evergreen"),[1] participated in a JAMS arbitration with Defendants Warner Bros. and New Line in Los Angeles, California pursuant to the arbitration provisions.  *See* Ex. 1, *Evergreen Media Holdings*, 2014 WL 5681852, at *2-4 (S.D. Tex. Nov. 4, 2014).  Despite participating in arbitration for nine months, Plaintiff thereafter filed a series of duplicative lawsuits in the Southern District of Texas, seeking relief based on the same issues, agreements, the same claims, and the same set of facts as those that were at issue in the arbitration between the same parties (and the same underlying facts here).

Specifically, on March 28, 2014, Plaintiff filed a lawsuit in Judge Rosenthal's Court based on the same operative facts as this one, styled *Evergreen Media Holdings, LLC and Tony DeRosa-Grund v. Warner Bros. Entertainment, Inc., et al.* (Cause No. 4:14-cv-00793) ("Senior Case").  In the Senior Case, Plaintiff and Evergreen sued Defendants Warner Bros. and New Line asserting various claims relating to the allegation that Defendants failed to pay a portion of the profits from "The Conjuring" film, as well as the allegation that Defendants wrongfully created the films "Annabelle" and "The Conjuring 2" without compensating Plaintiff.  *See* Ex. 4, First Am. Compl. in Senior Case ¶¶ 55-56, 82, 112-15.  Plaintiff further claimed that the agreements should be terminated with all rights reverting to him and/or his companies.  *Id.* ¶ 132.

Less than a month later, Plaintiff, along with Evergreen and Gerald Brittle, filed a similar case in Judge Hittner's Court on April 23, 2014, styled *Evergreen Media Holdings, LLC, Tony DeRosa-Grund, and Gerald D. Brittle v. Lorraine Warren, Tony Spera, Graymalkin Media, LLC, New Line Productions, Inc., and Warner Bros. Entertainment, Inc.* (Cause No. 4:14-cv-01117)

---

[1] Plaintiff is the Executive Chairman of Evergreen, according to Plaintiff's prior pleadings.

4

("Junior Case"). In the Junior Case, Plaintiff again asserted claims based on "The Conjuring," "Annabelle," and "The Conjuring 2." After alleging that "Annabelle" and "The Conjuring 2" were based on case files purchased by New Line, Plaintiff asserted that New Line's productions of "Annabelle" and "The Conjuring 2" were based on the book *The Demonologist*, which he claimed violated his rights in a purported option to exploit *The Demonologist*.[2] *See* Ex. 5, Junior Case Compl. ¶¶ 39, 72, 74. Plaintiff asserted claims against Warner Bros. and New Line for, among other things, copyright infringement and tortious interference with contract. *See id.* ¶¶ 81-90. In the Junior Case and Senior Case, Plaintiff also discussed at length the involvement of Chad and Carey Hayes, who Plaintiff now joins as Defendants. *See, e.g.,* Ex. 5, Junior Case Compl. ¶¶ 19, 22, 28.

Plaintiff filed a third lawsuit on October 22, 2014 against New Line Cinema LLC and New Line executive Craig Alexander. *See Tony DeRosa-Grund, The DeRosa-Grund Family Trust v. New Line Cinema LLC and Craig A. Alexander* (Cause No. 4:14-cv-03019). The third lawsuit, like the others, also revolved around "The Conjuring" film. However, when Judge Werlein recused himself and the case was reassigned to Judge Hughes, Plaintiff quickly dismissed the case the very day of the reassignment.

Since the Senior Case and Junior Case revolved around the same operative facts, Defendants filed a motion to consolidate the two cases into the Senior Case, which was promptly granted. *See* Ex. 1, *Evergreen Media Holdings v. Warner Bros. Entm't*, No. H-14-0793, 2014 WL 5681852, at *4 (S.D. Tex. Nov. 4, 2014) (reviewing procedural history).

A fourth lawsuit filed by Plaintiff and Evergreen was removed to the Southern District of Texas on June 11, 2014, in which Plaintiff sued The Safran Company and Peter Safran

---

[2] Mr. Brittle, the author of *The Demonologist*, asserted claims against Warner Bros. and New Line for, among other things, copyright infringement and tortious interference. *Id.* ¶¶ 125-33.

5

15082583v.2

("Safran").  *See Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 669-70 (S.D. Tex. 2014).  Plaintiff's claims again Safran (who is discussed in this suit[3]) arose out of "The Conjuring" film.  *See id.*  Judge Harmon found that the Court could not exercise personal jurisdiction over Defendant Safran or The Safran Company.  *See id.* at 685.

As noted, prior to the filing of either the Senior Case or Junior Case, an arbitration proceeding was instituted in Los Angeles, California.  Accordingly, Defendants sought to dismiss the Senior Case and Junior Case in favor of the then-pending arbitration based on the broad arbitration clauses in the Quitclaim Agreement and Producer Agreement.[4]  Judge Rosenthal dismissed the suits in favor of the pending California arbitration in a thorough opinion.  *See* Ex. 1, *Evergreen Media Holdings*, 2014 WL 5681852, at *1-14 (providing extensive analysis of the underlying issues, facts, and claims, and dismissing in favor of arbitration).  Judge Rosenthal found that the claims and issues were subject to the binding arbitration agreements.  *See id.*  Because the Junior Case had been voluntarily dismissed shortly before the Court issued its ruling, Judge Rosenthal noted that both the Senior Case and the Junior Case were dismissed.  *See id.* at *14 n.8.

The arbitration has now concluded and New Line was declared the prevailing party.  New Line was awarded $169,775.62 in the arbitration.  Among other things, the arbitrator ruled that "DeRosa-Grund retained no rights whatsoever in 'The Conjuring' project other than those specifically reserved pursuant to the terms of the Agreements [such reserved rights are not at

---

[3] *See* Pl.'s Orig. Compl. (Doc. No. 1) ¶¶ 4, 30, 31, 36, 43, 44.

[4] Defendants' motions to dismiss may be obtained through ECF/Pacer for the Senior Case.  *See* Defs. Warner Bros. and New Line's Mot. to Dismiss or Stay in Favor of Ongoing Arbitration; or in the Alternative to Transfer Venue (Doc. No. 8) (filed Apr. 25, 2014) (Cause No. 4:14-cv-00793); Defs. Motion to Dismiss (Doc. No. 34) (Cause No. 4:14-cv-00793).

15082583v.2

issue here]." Ex. 6, Redacted Final Award at NL003939-3940. The final award is currently being appealed through JAMS.[5]

On September 22, 2015, Plaintiff – now acting pro se – filed this Complaint, which again asserts claims relating to the motion pictures "The Conjuring" and "Annabelle," as well as the unreleased motion picture "The Conjuring 2." Plaintiff claims that he wrote a story called "The Conjuring Treatment" based on his discussions with Mr. Warren relating to the Perron Farmhouse case, which he alleges was "used without authorization by Defendants as the foundation and basis for the hit theatrical motion picture 'The Conjuring,' as well as its subsequently released theatrical motion picture 'Annabelle,' and the theatrical motion picture 'The Conjuring 2' . . . ." Compl. (Doc. No. 1) ¶ 25 n.2. Plaintiff's allegation regarding "The Conjuring Treatment" is, of course, not a new allegation. Plaintiff previously alleged that he wrote this story, although in prior complaints he simply referred to it as his "written story and treatment based on the 'Perron Farmhouse' Case File" (rather than defining it as "The Conjuring Treatment"). *See* Ex. 4, First Am. Compl. in Senior Case at ¶¶ 15, 16. Plaintiff alleges that "The Conjuring" film violates his copyright in "The Conjuring Treatment," and that Defendants violated the Lanham Act by confusing members of the public as to the true nature of "The Conjuring," "Anabelle," and "The Conjuring 2." *See* Compl. (Doc. No. 1) ¶¶ 51, 58.

Although Plaintiff's Complaint here purports to assert claims that are different from prior complaints, the underlying issues are the same as both the Senior Case and the Junior Case.

---

[5] On August 7, 2015, Plaintiff filed another complaint ("August 2015 Complaint"), which is virtually identical to the Complaint here. *See* August 2015 Complaint in Cause No. 4:15-cv-02273. The only difference between the August 2015 Complaint and the Complaint here is that the Complaint here includes two new paragraphs under a heading titled "Preliminary Statement" and Safran is not a Defendant in this Complaint (although Safran is discussed in both complaints in the same manner). *Compare* Compl. (Doc. No. 1), *with* August 2015 Complaint in Cause No. 4:15-cv-02273. Since the August 2015 Complaint was nothing more than a thinly veiled attempt to harass Defendants in an attempt to avoid the arbitration award, Defendants served Plaintiff with a Motion for Sanctions on August 27, 2015 in accordance with the 21-day safe harbor provision of Federal Rule of Civil Procedure 11. Within twenty-four hours, Plaintiff's attorneys filed a Notice of Voluntary Dismissal.

7

Indeed, in some instances, Plaintiff copied nearly verbatim allegations from the Senior and Junior Cases, while in others, he summarized them. *Compare, e.g.,* Ex. 4, First Am. Compl. in Senior Case ¶¶ 14, 15, 40, *with* Compl. (Doc. No. 1) ¶¶ 24, 25, 39; *compare also, e.g.,* Ex. 4, Am. Compl. in Senior Case ¶¶ 21-22 (detailing allegations relating to bankruptcy proceedings), *with* Compl. (Doc. No. 1) ¶ 33 (summarizing the allegations). In any event, Plaintiff's claims in this case certainly "relate to" the Quitclaim Agreement, under which New Line acquired all of Plaintiff's rights in "The Conjuring" project, including a treatment and a screenplay both entitled "The Conjuring," as well as the rights he purportedly obtained from the Warrens and the Warren's entire case file library, among other things. As noted, the Quitclaim Agreement contains a broad arbitration provision.

**ARGUMENT**

A.  **Plaintiff is barred by collateral estoppel from relitigating the issue of Defendants' purported unauthorized use of "The Conjuring Treatment."**

The Court should dismiss this case on the basis that Plaintiff is collaterally estopped from relitigating the issue of Defendants' use of "The Conjuring Treatment." Issue preclusion, or collateral estoppel, precludes a party from litigating an issue already raised in an earlier action between the same parties if the following elements are satisfied: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999); *see Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 751 (S.D. Tex. 2010). Preclusion analysis may be applied to prior litigation or prior arbitration. *See, e.g., Tremont LLC*, 696 F. Supp. 2d at 825 (holding preclusion analysis was "appropriately applied to the arbitration awards in this case"). The parties to the second suit need not be identical. For

instance, where a plaintiff litigates an issue in one suit and files a second suit against a different defendant, the defendant in the second suit can invoke collateral estoppel (which is called non-mutual defensive collateral estoppel). *See, e.g., Blonder-Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 328-29 (1971) (permitting use of non-mutual defensive collateral estoppel).

Here, Plaintiff is precluded from arguing that the "Conjuring Treatment" was used without authorization by Defendants. Compl. (Doc. No. 1) ¶ 25 n.2. Plaintiff alleges that "The Conjuring" film violates his copyright in "The Conjuring Treatment," and that Defendants violated the Lanham Act by confusing members of the public as to the true nature of "The Conjuring," "Anabelle," and "The Conjuring 2." *See id.* ¶¶ 51, 58. Plaintiff previously alleged that he wrote this story, although in prior complaints he simply referred to it as his "written story and treatment based on the 'Perron Farmhouse' Case File" (rather than defining it as "The Conjuring Treatment"). *See* Ex. 4, Am. Compl. in Senior Case at ¶¶ 15, 16. The underlying issues and facts are the same here as both the Senior Case and the Junior Case, even if Plaintiff's Complaint here purports to assert claims that are different from prior complaints. As noted above, Plaintiff copied nearly verbatim allegations from the Senior and Junior Cases. The arbitrability of these issues was actually litigated in the Senior and Junior Cases, and Judge Rosenthal conclusively held that these issues were subject to arbitration. *See* Ex. 1, *Evergreen Media Holdings v. Warner Bros. Entm't*, No. H-14-0793, 2014 WL 5681852 (S.D. Tex. Nov. 4, 2014).

Additionally, Plaintiff is collaterally estopped as a result of the arbitrator's award. In ruling on Plaintiff's Lanham Act claim, the arbitrator noted that Plaintiff had argued in the arbitration that he "created, developed and owned the original story ***treatment*** and that New Line

9

should have submitted his story and *treatment* to the Writer's Guild of America for purposes of 'Story by' credit." Ex. 6, Redacted Final Award at NL003943 (emphasis added); *see also id.* at NL003941 (holding that a release barred Plaintiff's Lanham Act claim, which was based on the treatment). Further, comparison of Plaintiff's testimony at the arbitration hearing with his allegations here also shows that this issue was litigated in the arbitration. *Compare, e.g.,* Ex. 7, Arbitration Hearing Tr. at 534:21-535:6, 536:1-5 (testimony regarding the treatment and purported admissions in interviews regarding receiving the treatment), *with* Pl.'s Compl. ¶¶ 34-36 (same). The Arbitrator also found that the arbitration provisions were enforceable, not procedurally or substantively unconscionable, and that, in any event, Plaintiff waived any such objections. *See* Ex. 6, Redacted Final Award at NL003936.[6] The Arbitrator also upheld the release contained in the first amendment to the Quitclaim Agreement,[7] which made clear that the "treatment" was "owned and controlled by [New Line] . . . ." Ex. 2A, Amendment No. 1 to Option Quitclaim Agreement at ¶ 24 [NEWLINE001282]. Because Plaintiff actually litigated the issue of the use of "The Conjuring Treatment" in the arbitration, he is collaterally estopped from relitigating the issue here.

Finally, collateral estoppel applies even though Plaintiff has joined additional Defendants (Chad and Carey Hayes) in this suit. In the Junior Case and Senior Case, Plaintiff also discussed at length the involvement of Chad and Carey Hayes, who Plaintiff now joins as Defendants. *See, e.g.,* Ex. 5, Junior Case Compl. ¶¶ 19, 22, 28. As noted above, non-mutual defensive issue preclusion is permitted.

---

[6] Judge Rosenthal also reached the issue of the enforceability of the arbitration provisions, but her order suggested that the Arbitrator could decide this issue too, which is exactly what he did. *See* Ex. 1, *Evergreen Media Holdings*, 2014 WL 5681852, at *10-13.

[7] Ex. 6, Redacted Final Award at NL003940-41.

15082583v.2

Accordingly, the Court should dismiss this suit on the basis of collateral estoppel because Plaintiff is precluded from relitigating Defendants' alleged unauthorized use of "The Conjuring Treatment."

**B.     Alternatively, all of Plaintiff's claims should be dismissed or stayed in favor of arbitration.**

Alternatively, all of Plaintiff's claims should be dismissed or stayed in favor of arbitration. The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (internal quotations and citations omitted). Consistent with the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013) (citation omitted); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1207 (2006) (explaining that the FAA "embodies the national policy favoring arbitration"). Section 3 of the FAA requires a mandatory stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. 9 U.S.C. § 3; *Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).

Courts conduct a two-step inquiry to determine whether to grant a motion to stay or dismiss under Section 3 in favor of arbitration:

> First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. When considering the first question, there are two considerations: (1) whether there is a valid agreement between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted).[8]

When determining whether an issue is within reach of an agreement to arbitrate, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). "Narrow arbitration clauses are ones where the language of the clause requires the arbitration of disputes 'arising out of' the agreement, whereas broad arbitration clauses are those where the language of the clause requires arbitration of *any* dispute that arises out of or relates to "the agreement, or disputes that are 'in connection with' the agreement.'" *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. Appx. 188, 192 (5th Cir. 2009) (emphasis added). If the clause is broad, "any litigation arguably arising under such a clause should be stayed pending the arbitrator's decision as to whether the dispute is covered." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) (citations omitted).

In any event, "[i]n view of the policy favoring arbitration, [the Fifth Circuit] ordinarily resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Hendricks v. UBS Fin. Servs., Inc.*, 546 Fed. Appx. 514, 518 (5th Cir. 2013) (citations omitted). Thus, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (internal quotations and citations omitted).

---

[8] The validity of an agreement to arbitrate is decided according to state law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). Here, California law applies, as the agreements specify that they shall be governed and construed in accordance with California law. (O'Connor Decl., Ex. A ¶ 21(e), Ex. B ¶ 25.) Like federal law, California law favors enforcement of arbitration agreements. *See, e.g., Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (Cal. 2000). "Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for the revocation of any contract." *Id.* at 98 (citations omitted).

15082583v.2

Although the district court's issuance of a stay under Section 3 of the FAA is mandatory if this two-step inquiry is satisfied, the Fifth Circuit further holds that when all of the issues raised in the district court must be submitted to arbitration, the court may dismiss, rather than stay, the case. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citations omitted); *see also James v. Conceptus*, 851 F. Supp. 2d 1020, 1039-40 (S.D. Tex. 2012). The Fifth Circuit recognizes that such dismissal is proper pursuant to Rule 12(b)(3). *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (citations omitted).

Here, the Quitclaim Agreement and Producer Agreement provide broad language for arbitration over any disputes that "aris[e] out of or relate[] to [the] Agreement[s] or the interpretation, performance or breach thereof . . . ." Ex. 2, Quitclaim Agreement ¶ 21; Ex. 3, Producer Agreement ¶ 25. Under the agreements, any rights relating to the "Property" that Plaintiff acquired before or after the agreements were entered into were the property of New Line. Ex. 2, Quitclaim Agreement, ¶ 1A(d); Ex. 3, Producer Agreement, ¶ 9(a). The Property was broadly defined as the entire case file library (approximately 8,000 case files) related to the Warrens' paranormal investigations, the life stories of the Warrens, any prior scripts related to the project, and all rights under any agreement previously entered into between Plaintiff and any other entity in his prior attempts to make a movie based on the Warrens' lives or case files. Ex. 2, Quitclaim Agreement, ¶ 1A; *see also Evergreen Media Holdings*, 2014 WL 5681852, at *2 (noting that under the agreements, New Line acquired Plaintiff's "rights, title, and interest in literary properties including the motion-picture screenplay for 'The Conjuring,' the 'life rights' of Ed and Lorraine Warren, and the Warrens' case-file library."). Further, the Quitclaim Agreement expressly covered the very treatment over which Plaintiff sues: the parties recognized that "if DeRosa-Grund contributed any oral or written material to the screenplay for the motion picture currently entitled 'The Conjuring' (including,

13

but not limited to, a *treatment*), such material is owned and controlled by Company pursuant to the terms of the Certificate of Employment dated as of November 11, 2009,"[9] which in turn acknowledged that such material was a "work[] made for hire . . . ." or, to the extent not deemed a work made for hire, "any and all right, title and interest" in the material was explicitly "assign[ed] and transfer[ed]" to New Line. Ex. 2B, Certificate of Employment at 1 [NEWLINE001285].

> Additionally, the Producer Agreement made clear that the rights granted included:
>
> All results and proceeds of every kind of the services heretofore and hereafter to be rendered by Lender and/or Artist in connection with the Picture, including without limitation all ideas, suggestions, themes, plots, stories, characterizations, dialogue, titles and other material, whether in writing or not in writing, at any time heretofore or hereafter created or contributed by Lender and/or Artist which in any way relate to the Picture or to the material on which the Picture will be based (collectively 'Material') . . . .

Ex. 3, Producer Agreement at ¶ 9(a). Like the Certificate of Employment, the Producer Agreement also recognized that such material was deemed to be a "work[] made for hire . . . ." or, to the extent not deemed a work made for hire, "any and all right, title and interest" in the material was explicitly "assign[ed] and transfer[ed]" to New Line. *Id.*

Thus, Plaintiff's claims based on "The Conjuring Treatment" undoubtedly relate to Plaintiff's agreements with New Line, which contain broad arbitration provisions. Accordingly, as an alternative to dismissing the case on the basis of finding that the Plaintiff is collaterally estopped from litigating the issue of the use of "The Conjuring Treatment," the Court should dismiss the case due to the arbitration agreement between the parties.[10]

---

[9] Ex. 2A, Amendment No. 1 to Option Quitclaim Agreement at ¶ 24 [NEWLINE001282] (emphasis added).

[10] The existence of Chad and Carey Hayes as defendants does not change the analysis. *See, e.g., Evergreen Media Holdings*, 2014 WL 5681852, at *12-13 (noting that the arbitration clause was applicable to Plaintiff's claims against the nonsignatory). As an alternative to dismissing or staying the case in favor of arbitration, should any of Plaintiff's claims be deemed non-arbitrable, they should be transferred to the Central District of California in light of

14

## PRAYER

Subject to their currently-pending Motion for Sanctions, Defendants respectfully request that the Court dismiss Plaintiff's Complaint on the basis of collateral estoppel, or in the alternative, dismiss or stay Plaintiff's Complaint in favor of arbitration, or in the further alternative, transfer Plaintiff's claims to the Central District of California.

Respectfully Submitted,

JACKSON WALKER L.L.P.

*/s/ Charles L. Babcock*
Charles L. "Chip" Babcock
State Bar No. 01479500
S.D. ID # 10982
*Attorney-in-Charge*
cbabcock@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
**Attorney-in-Charge for Defendants Time Warner Inc., Warner Bros. Entertainment Inc., and New Line Productions, Inc.**

---

the agreements' forum selection clauses, pursuant to 28 U.S.C. § 1404(a). *See* Ex. 2, Quitclaim Agreement ¶ 21; Ex. 3, Producer Agreement ¶ 25.

15082583v.2

**OF COUNSEL:**

JACKSON WALKER L.L.P.

Courtney T. Carlson
State Bar No. 24065004
S.D. ID # 1115579
ccarlson@jw.com
William J. Stowe
State Bar No. 24075124
S.D. ID #1138801
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4200
(713) 752-4221 – Fax


**CERTIFICATE OF SERVICE**

      This is to certify that on November 12, 2015, the foregoing document was served on the following *pro se* party via certified mail return receipt requested, regular mail, personal service, and email:

    Tony DeRosa-Grund, *pro se*
    923 High Meadow Ranch Drive
    Magnolia, Texas 77356
    (281) 806-9423
    tonydg@evergreenmediagroup.com

                                              */s/ William J. Stowe*
                                                William J. Stowe

15082583v.2